NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                    :
PAUL S. YORK,                       :
                                    :   Civil Action No. 08-cv-321 (PGS)
        Plaintiff,                  :
                                    :
    v.                              :   **OPINION**
                                    :
COMMISSIONER OF SOCIAL              :
SECURITY,                           :
                                    :
        Defendant.                  :
_____ :

SHERIDAN, U.S.D.J.

This matter is before the Court pursuant to the provisions of 42 U.S.C. §405(g). Plaintiff seeks review of the final decision of the Commissioner of Social Security finding him not disabled as defined in the Social Security Act and thus not entitled to disability insurance benefits.

Plaintiff had previously alleged a closed period of disability from May 25, 2002 through June 21, 2004. Thereafter, Plaintiff filed an application for a period of disability and disability insurance benefits for a period commencing June 22, 2004 (the day after his closed period of disability ended). On June 30, 2008, the ALJ Edgell denied Plaintiff's request for benefits. Plaintiff appeals.

Paul S. York is a 38 year old man born December 20, 1969. He lives by himself in an apartment in Hackensack, New Jersey. He is 5'9" and weighs approximately 290 pounds. He graduated high school. Between October 1, 1988 through June 1, 1992, Mr. York served in the United States Army (R. 65). During his enlistment, Plaintiff was deployed in the invasion of Panama. Although he trained as combat signaler and radio operator, he was assigned to lifting body

bags. (R. 432). During this mission, a friend was mortally wounded. As a result, he suffers from post traumatic stress disorder (PTSD). He suffers flashbacks and vivid nightmares of his combat experience. He described his PTSD as follows:

> I was having dreams about . . . about when I went to combat on my 20th birthday, the night we went to war, so I have a lot of bad dreams about it and sleepless nights. I have, I guess [inaudible] I get, you know, real frustrated easier than normal. Since 9/11 happened, I started seeing a lot of people in a lot different ways as far as potential enemies. So he put me on Zoloft [inaudible] and [inaudible], which I am on now that's why I'm a little groggy right now, but that keeps me tired, keeps me calm.

On May 16, 2006, the Department of Veteran's Affairs (VA) classified him as one hundred percent disabled due to PTSD. (R. 361). Plaintiff's current source of income is military disability payments. (R. 426).

Aside from his military service, from November 1997 through May 2002, Plaintiff worked for a printing company in the shipping and delivery department. More specifically, he drove a van and delivered boxes of stationary to customers. The heaviest box Mr. York would carry was about 100 pounds, but most were 25 pounds. (R. 85, 429). Other work experience includes working as a machine operator, and as a computer wiring assembler. (R. 429-31).

In May 2002, Plaintiff was injured in a car accident which resulted in a herniated disc of the lumbar spine at L5-S1. (R. 135). Due to this injury, Plaintiff ceased work and has not returned to work since then.

As noted previously, Plaintiff was awarded a closed period of disability from May 2002 through June 2004 based on this impairment. (R. 25, 65, 70). In his current application for disability

benefits, Plaintiff alleges that his lower back pain affects his ability to ambulate and complete tasks.

(R. 81).  He testified at the hearing:

> Answer:  It's mostly not right when the weather changes. Some days I can't, you know . . . I have sharp pains, so I just turn, position myself different ways. Like, for the last few nights . . . I have been sleeping on the floor for the last few nights because it's been bothering me.

In addition, Plaintiff testified that he can not work due to PTSD which hampers his ability to concentrate and get along with others. (R. 81, 432).

Mr. York indicated that PTSD had been ongoing for two years, and that he had been treated by a psychiatrist for about one year. He takes medications to relieve the symptoms since December 2005. [1] (R. 433). Plaintiff testified the 9/11 attack aggravated his PTSD, and the events on that day have made him for more aggressive and angry. (R. 434) With treatment, his sleep has improved, but he still wakes up at night. He reported that he gets roughly six hours of sleep a night when he takes his medication. (R. 437). Socially, Plaintiff reported that he sometimes goes to dinner with a friend and plays cards. (R. 80). He enjoys fishing in a rowboat, and tries to walk for exercise. He tries to walk "a good mile a day," and likes to do some swimming when it is warm. (R. 440). He does not use any assistive devices.

Plaintiff is able to take care of himself, including preparation of meals, cleaning at a pace, laundering his clothes and ironing. The heaviest object that he carries is his laundry basket which he carries downstairs to his car. (R. 440). He avoids yard work because it bothers his back (R. 79,

---

[1]  Plaintiff's current medications are Zoloft (antidepressant), Depakote (a mood stabilizer), Seroquel (a neuroleptic) and Oxycodone. (R. 95-96).

435). When he goes out, he either walks or drives a car. He helps in raising his son, and visits his father's house on a regular basis. (R. 77, 80, 436-48). Plaintiff reports that he has difficulty getting along with family and friends due to his mood swings and he avoids being around other people.

Review of Medical Records[2]

    A.    Holy Name Hospital

The record chronicles Plaintiff's treatment for lower back pain resulting from his 2002 automobile accident for which he underwent discography and epidural steroid injection treatments at Holy Name Hospital.

Plaintiff treated at Holy Name Hospital Pain Management Center on several occasions. On June 21, 2004, the doctor found that his pain seemed to be subsiding; but back pain would return after an hour of working around the house. He was able to get in and out of a chair easily, and walked briskly. There appeared to be a minimal amount of lower back pain. (R. 185, 265).

On November 17, 2004, Plaintiff again reported that his back pain was lessening although his lower back muscles were extremely tight. (R. 182, 263).

On February 11, 2005, plaintiff had a relapse. Plaintiff reported significant lower back pain radiating down into his thighs, and the pain worsened when sitting for any length of time. (R. 179, 259). The next month, he underwent a provocative discography in attempt to alleviate this pain. The discography was performed successfully at L3-L4 and L4-L5, but was considered unsuccessful at L5-S1. (R. 178, 254-58). At that time Plaintiff's pain was reported to be a "7 out of 10." Plaintiff reported that he had been sleeping fairly well, although he would awaken once in a while due to

---

[2]     The medical evidence reviewed commences with the period of alleged disability subsequent to June 21, 2004.

discomfort. At some point during the early spring of 2005, lumbar epidural steroid injections at L5-S1 were administered and these injections significantly relieved his symptoms. (R. 173-174, 250, 252). On August 1, 2005, Plaintiff reported that his back pain had intensified, and he increased his use of percocet. Mr. York advised that he was sleeping better than before, was able to get up out of a chair and was able to walk around, but was taking percocet fives times per day. Dr. Datta of Holy Name Pain Management Center recommended conservative therapy including aqua therapy. On March 10, 2006, an examination of the lumbar spine was normal to inspection with mild tenderness at L5. Plaintiff had no muscle spasms, had an active range of motion, left lateral flexion full and was asymptomatic to 25 degrees. There was no pain when rotating his hips, and no pain when abducting hips. Muscle strength was normal and he had a normal gait. Plaintiff was advised to undergo a conditioning program which included physical therapy, home exercises and weight loss. (R. 239)[3].

  B. <u>Orthopedic Consultative Examinations of Alan Friedman, M.D. dated November 14, 2005</u>

On examination, Plaintiff had full range of motion of the upper and lower extremities as well as the cervical spine; but a lumbar spine flexion was restricted to 45 degrees secondary to pain. An x-ray of that date showed the lumbrosacral spine was normal. (R. 191-93). The Physical Residual Functional Capacity Assessment found that Plaintiff had no established exertional, postural, manipulative, visual communicative, or environmental limitations. (R. 204-09).

---

[3] From June 15, 2005 through June 24, 2005, Plaintiff was hospitalized due to a high fever and multiple skin lesions on his thighs, abdomen and arms. The doctor diagnosed a methicillin resistant staph infection, and Plaintiff was treated with clindamycin. (R. 138-168). It was an isolated incident.

5

### C.     Reports of Kenneth Jungblut, M.D. (Psychiatrist)

Plaintiff was examined by Kenneth R. Jungblut, M.D for a psychiatric evaluation on several occasions. They are reviewed below. On March 23, 2004, upon a referral by the Veteran's Administration, York sought treatment for PTSD for symptoms of flashbacks, angry outbursts and nightmares. Plaintiff was found to be extremely anxious, and reported to Dr. Jungblut that he was waking two to three times a night with nightmares and flashbacks of combat experiences. He had fairly good insight, mood was mildly depressed, memory was intact and seemed to be motivated for therapy. He was diagnosed with PTSD and cannabis abuse and was found to have moderate psychosocial issues. He was prescribed no medication, and weekly counseling was recommended. (R. 134-35).

In September 2004, Plaintiff reported that the flashbacks continued and agreed that medications might be helpful to him. In November 2004, it was noted that he was responsive to his medications, was feeling less angry, and was sleeping somewhat better. (R. 133). Four months later in early 2005, Plaintiff was "off meds," was staying home a lot, and was less agitated. Plaintiff's medications were lowered at that time because Plaintiff reported feeling too sedated. (R. 133). At a April 13, 2005 visit, Plaintiff was doing better. He was more active and was reported that he was going out more. (R. 132).

### D.     Consultive Mental Status Evaluation by Alec Roy, M.D.

On October 15, 2005, Plaintiff was seen for a Division of Disability mental status evaluation by Alec Roy, M.D. Dr. Roy took an extensive history. Plaintiff stated that he was seeing a psychiatrist every two to three weeks, and a therapist whom he was seeing more frequently for PTSD. (R. 186). The flashbacks occurred a couple times per week and the "meds keep me calm."

He told Dr. Roy that currently he was experiencing the flashbacks two or three times a month. (R. 186). He is moody and has a short tolerance level, but not depressed. He stated he doesn't work anymore because his "counselor doesn't think it is safe for me to work." (R. 187). Plaintiff's average day includes doctor's appointments, visiting his father who lives in a neighboring town, and watching about 4 to 5 hours of television a day. His speech was normal and there were no hallucinations. His thought processes were normal, he was fully oriented, and there was no evidence of memory dysfunction. (R. 188). York often drives to visit his father's residence in another town, and returns via Route 80, a major highway. He walked with a normal pace without assistance or a limp. At the time, Plaintiff reported that his symptoms had improved by "about sixty percent," and the frequency of the nightmares and flashbacks decreased from twice a week to twice a month. (R. 189). Plaintiff was diagnosed with post traumatic stress disorder - partial remission. Plaintiff's prognosis was good with continued treatment, and Dr. Roy found that Plaintiff did not have any major symptoms that would prevent him from considering employment opportunities at the time.

      E.      <u>Reports of Juan Falcon, M.D. of the VA</u>

Plaintiff is currently undergoing psychiatric treatment at the VA in Hackensack, New Jersey. The initial psychiatric report of Juan Falcon, MD, a psychiatrist, dated December 7, 2005 was very different than the report of Dr. Roy. According to Dr. Falcon, Plaintiff was anxious, irritable and angry with episodes of rage and road rage. He reported intrusive thoughts about past combat experiences which are triggered by diesel fuel smell, helicopter engine sounds, unexpected loud noises, and the smell of burned fireworks powder. He reported spending much of his time sitting in his bedroom because he feels secure there. York was unable to forget the experience of being in the middle of war in Panama and being assigned to pick up dead bodies. He reported that he lost most

of his jobs due to problems with authority figures and problems with coworkers. He reported a prior conviction for weapon possession for which he was sentenced to five years of probation, and that he was charged with domestic violence in the past. Plaintiff's PTSD had deteriorated since the World Trade Center tragedy and the Iraq war, and Plaintiff was unemployable due to same. Dr. Falcon opined that Plaintiff would benefit from intense psychotherapy. At a follow up examination, Plaintiff was depressed, and his affect was blunted. His speech was normal, there were no perceptual problems and his thought processes were normal, there was no suicidal or homicidal ideation, and he was oriented to person place and time. His insight and judgment were fair, but his impulse control was below average. The severity of his symptoms were rated as moderately severe. Dr. Falcon found that Plaintiff has learned to swallow his anger, shame and disgust, pushing it to the furthest corners of his memory until something triggers the thoughts. At the time, Plaintiff learned to control his anger more effectively, but still was very impatient. He claimed to be living in the past, and that his combat memories remained as fresh as if it happened yesterday. He was taking his medications and was highly motivated to continue to follow up treatment.

Plaintiff continued to treat with Dr. Falcon between January and May 2006. On May 16, 2006, the VA, based upon Falcon's findings, found that Plaintiff was unemployable and rated him as 100% disabled because of his psychiatric problems.

      F.     <u>Residual Functional Capacity Assessment and Psychiatric Review Technique</u>

The Mental Residual Functional Capacity Assessment performed at the request of the Social Security Administration found only moderate limitations in Plaintiff's ability to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration, and to perform activities within a schedule, maintaining regular attendance and to be

8

punctual within customary tolerances. He was also found to have moderate limitations in the areas of responding appropriately to changes in work setting and in his ability to set realistic goals or to make plans independently of others. (R. 212 -19). The assessment concluded that Plaintiff could maintain concentration, persistence and pace for simple tasks.

The Psychiatric Review Technique of October 20, 2005 was completed based on listing number 12.06 (Anxiety Related Disorders) and evaluated the record based on symptoms of "recurrent and intrusive recollections of a traumatic experience which are the source of marked distress." In rating Plaintiff's functional limitations, the reviewer found only mild limitations in Plaintiffs activities of daily living, and maintaining social functioning, but found a moderate degree of limitation and difficulties in maintaining concentration, persistence and pace. There were no marked or extreme limitations noted. (R. 216- 28).

ALJ's Decision and Five Step Test

A claimant is considered disabled under the Social Security Act if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §423(d)(1)(A). A plaintiff will not be considered disabled unless he cannot perform his previous work and is unable, in light of his age, education, and work experience, to engage in any other form of substantial gainful activity existing in the national economy. *Id.* at §423(d)(2)(A). *See Sykes v. Apfel*, 228 F.3d. 259, 262 (3d Cir. 2000); *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 118 (3d Cir. 2000); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). The Act requires an individualized determination of each plaintiff's disability based on evidence adduced at a hearing. *Sykes*, 228 F.3d at 263 (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)); see 42

U.S.C. §405(b).  The Act also grants authority to the Social Security Administration to enact regulations implementing these provisions.  *See Heckler*, 461 U.S. at 466; *Sykes*, 228 F. 3d at 262.

The Social Security Administration has developed a five-step process set forth in the Code of Federal Regulations for evaluating the legitimacy of a plaintiff's disability which the ALJ followed. Not all of the steps are at issue. It is noteworthy that at Step Two, the ALJ found severe impairments including PTSD in partial remission, discogenic disease of the lumbar spine and obesity.  At Step Three, the ALJ found that Mr. York did not have an impairment set forth in the Listing of Impairments located in 20 C.F.R. §404, Subpart P, Appendix 1.  *Id*. either individually or in combination.  At this step, an ALJ must identify relevant listed impairments, discuss the evidence, and explain his reasoning.  *Burnett*, 220 F.3d at 119-20.  A conclusory statement of this step of the analysis is inadequate and is "beyond meaningful judicial review." *Id.*

Relying on the reports of Dr. Jungblut, Dr. Roy, Dr. Friedman and Dr. Datta of Holy Name, as well as the testimony of Plaintiff, ALJ Edgell found that Plaintiff did not have an impairment or combination of impairments that met one of the listed impairments in 20 C.F.R. §404.  The ALJ wrote:

> Specifically, there is no documentation of any significant motor, sensory or reflex deficit as required under medical listing 1.04A which pertains to spinal disorders. (R. 30).  Moreover, there is no clinical basis for assessing marked restrictions in any of the four Part B categories application to mental conditions under section 12.00 of the listings, including listing 12.06 which deals with anxiety disorders.  It is noted that the state agency medical consultants who analyzed the evidence of record at the previous states of administrative review similarly failed to find that any listing was met or equaled. (Exhibits B-9F - B-11F). (R. 30).

Because the Plaintiff does not suffer from a listed severe impairment or an equivalent, the ALJ proceeded to Steps Four and Five. *Plummer*, 220 F.2d at 428. In Step Four, the ALJ must consider whether the plaintiff "retains the residual functional capacity to perform [his or] her past relevant work." *Id.; see Sykes*, 228 F.3d at 263; 20 C.F.R. §404.1520(d). This step requires the ALJ to do three things: 1) assert specific findings of fact with regard to the plaintiff's residual functional capacity ("RFC"); 2) make findings with regard to the physical and mental demands of the plaintiff's past relevant work; and 3) compare the RFC to the past relevant work, and based on that comparison, determine whether the claimant is capable of performing the past relevant work. *Burnett*, 220 F.3d at 120. The plaintiff bears the burden of proof at Step Four. *Sykes*, 228 F.3d at 263. The ALJ found that Mr. York could perform his past work. The ALJ followed the requirements of *Sykes*. With regard to Plaintiff's residual functional capacity, the ALJ considered all of his impairments. With regard to his back injury, she relied on the findings of Dr. Friedman and Datta concluding that Mr. York could lift objects weighing 25 pounds frequently, and had full strength in his extremities. Next, the ALJ evaluated the PTSD claim. She ruled that it was not totally disabling. More precisely, the ALJ wrote:

> Regarding the claimant's mental status, the evidence chronicles a post-traumatic stress disorder in partial remission, within the context of medical listing 12.06. This condition is characterized by recurrent and intrusive recollections of a traumatic experience which are a source of marked distress. It has resulted in mild limitations in the claimant's ability to conduct his activities of daily living and sustain social functioning, and a moderate restriction relative to maintaining concentration, persistence of pace. There are no episodes of decompensation reflected within the evidence of record.

*  *  *

> In every examination within evidence, the claimant has been documented as being fully oriented and alert. He has consistently been described as being very pleasant and cooperative. There have been no signs of any hallucinations, delusions or paranoia. The claimant has not been hospitalized on a psychiatric basis. There is no documentation of the claimant experiencing any significant side effects from his psycho tropic medication regimen. It is accordingly concluded that the claimant is capable of performing jobs that do not require highly skilled complex tasks, and thus would be able to handle the mental demands of unskilled to semi-skilled work.

As aforementioned, the ALJ found that Mr. York was not disabled from performing his past work as a driver. The ALJ also pointed out why Dr. Falcon's findings were not persuasive.

> In this regard, it is pointed out that there has been no clinical documentation of any adverse mental findings. For instance, the claimant's speech and thought processes have continually been chronicled as being normal. No deficiencies in memory or cognition have been found. He had demonstrated the ability to perform calculations and abstractions. His insight and judgment have been shown to be intact. Hence, Dr. Falcon's assessment is not found to be corroborated by objective findings, and as such, it cannot be granted significant probative weight.

Standard of Review

Review of the Commissioner's final decision is limited to determining whether the findings and decision are supported by substantial evidence in the record. See *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999); see 42 U.S.C. §405(g). The Court is bound by the ALJ's findings of fact if they are supported by substantial evidence in the record. 42 U.S.C. S 405(g)*; Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion*." Hartranft,* 181 F.3d at 360 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation omitted)); see *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial

evidence is less than a preponderance of the evidence, but more than a mere scintilla. *Richardson*, 402 U.S. at 401; *Morales*, 225 F.3d at 316; *Plummer*, 186 F.3d at 422. Likewise, the ALJ's decision is not supported by substantial evidence where there is "competent evidence" to support the alternative and the ALJ does not "explicitly explain all the evidence" or "adequately explain his reasons for rejecting or discrediting competent evidence." *Sykes v. Apfel*, 228 F.3d 259, 266 n.9

The reviewing court must view the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984).

> A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence - - particularly certain types of evidence (e.g., that offered by treating physicians) - - or if it really constitutes not evidence but mere conclusion.

*Morales*, 225 F.3d at 316 (citing *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983)); *Benton v. Bowen*, 820 F.2d 85, 88 (3d Cir. 1987). Nevertheless, the district court's review is deferential to the ALJ's factual determinations. *Williams v. Sec'y of Health and Human Servs.*, 970 F.2d 1178, 1182 (3d Cir. 1992) (en banc) (stating that the district court is not "empowered to weigh the evidence or substitute its conclusions for those of the factfinder"). A reviewing court will not set a Commissioner's decision aside even if it "would have decided the factual inquiry differently." *Hartranft*, 181 F.3d at 360. But despite the deference due the Commissioner, "appellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence." *Morales*, 225 F.3d at 316 (quoting *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981)).

In this case, the ALJ carefully reviewed the evidence and set forth with particularity her rationale for determining that Mr. York is not disabled. The ALJ relied upon substantial medical evidence including the notes and opinions of Dr. Datta of Holy Name, Dr. Friedman, Dr.Jungblut and Dr. Roy.

In particular, Plaintiff argues that the VA's determination that Mr. York is totally disabled due to PTSD is binding on the Commissioner. To the contrary, the Regulations state that:

> a decision by any non governmental agency or any other governmental agency about whether an applicant is disabled or blind is based on its rules and is not our decision about whether he/she is disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that a claimant is disabled or blind is not binding on us." 20 C.F.R. §404.1504.

In short, the determination of the VA is not binding on the Administration. Here the ALJ reviewed the opinion of Dr. Falcon upon which the VA's decision was based, and found his findings to be wanting. *See Gifford v. Barnhardt*, 2005 WL 99551 (3d Cir. 2005). The Administration has a detailed set of regulations guiding its decision-making . There is no reason these regulations should be superceded by another agency's decision. Hence, the Court finds that the VA's decision is not binding upon the Commissioner.

The other major issue raised by plaintiff concerns the report of Dr. Roy. Plaintiff argues that little weight should be given the report because Dr. Roy did not review any of the records or reports detailing Plaintiff's medical or psychiatric history or the reports of other physicians.

It is clear from the report that Dr. Roy conducted a thorough history, and had a good sense of the case. The ALJ has broad discretion in determining what weight should be given the report. The ALJ appropriately relied on said report.

Lastly, the Commissioner has discretion to evaluate the credibility of the claimant's complaints and draw a conclusion based upon medical findings and other available information. *Jenkins v. Comm'r of Soc. Sec.*, 192 Fed. Appx. 113 (2006).  In this case, the ALJ found that plaintiff "was not entirely credible".  She declared:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that his statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible.

Hence, the medical testimony and reports discussed above plus the ALJ's finding concerning Plaintiff's credibility lead to the conclusion that there is substantial evidence supporting the ALJ's decision. Here, Plaintiff lives independently,  tends to his own affairs, reads, walks, drives and may lift some weight. In addition, with medications, Mr. York controls his PTSD.  It is reasonable that ALJ Edgell found Plaintiff can perform his past relevant work as a driver of a delivery truck.

Based on the foregoing, this Court affirms the final determination of the Commissioner of Social Security.

                                                    *s/Peter G. Sheridan*
                                                    PETER G. SHERIDAN, U.S.D.J.

November 14, 2008